IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CT-3233-FL

| | |
|---|---|
| CHRISTOPHER MOSBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JULIE HARPER, GEORGE T. SOLOMON, FRANK L. PERRY, DERRICK E. WADSWORTH, WILLIS J. FOWLER, ANTHONY E. RAND, W. DAVID GUICE, N.C. DEPT. OF PUBLIC SAFETY, and POST RELEASE SUPERVISION AND PAROLE COMMISSION, | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants.[1] | ) |

ORDER

This matter is before the court on defendants' motion for summary judgment (DE 40), plaintiff's motion for partial summary judgment (DE 50), and plaintiff's "sub judice motion" (DE 57). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion and denies plaintiff's motions.

**STATEMENT OF THE CASE**

On September 4, 2015, plaintiff, a state inmate, filed this civil rights action, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff filed a verified complaint[2] naming the following as defendants: Julie Harper ("Harper"), Aaron Johnson ("Johnson"), George T. Solomon ("Solomon"), Frank L. Perry

---

[1] The court has constructively amended the caption of this order to reflect the dismissal of two previously-named defendants: Aaron Johnson and Charles Mann.

[2] "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

("Perry"), Derrick E. Wadsworth ("Wadsworth"), Willis J. Fowler ("Fowler"), Anthony E. Rand ("Rand"), Charles Mann ("Mann"), W. David Guice ("Guice"), N.C. Dept. of Public Safety, and Post Release Supervision and Parole Commission ("Commission"). (See Compl. (DE 1) at III). Plaintiff alleges that he was falsely imprisoned by defendants because his parole was improperly revoked. (See id. at 6). Plaintiff further alleges that the revocation of his parole violated his rights to due process under the Fourteenth Amendment. (See id. at 3-6).

On March 24, 2016, this court conducted a frivolity review pursuant to 28 U.S.C. § 1915. This court found that it did not clearly appear from the face of the complaint that plaintiff was not entitled to relief, and the matter was allowed to proceed.

On May 20, 2016, defendants filed a notification of the death of defendant Mann. There was no motion for substitution of the proper party filed. On September 9, 2016, defendant Mann was dismissed pursuant to Federal Rule of Civil Procedure 25(a)(1). On November 15, 2106, this court dismissed defendant Johnson pursuant to Federal Rule of Civil Procedure 4(m) for failing to obtain proper service.

On February 17, 2017, defendants filed the instant motion for summary judgment, including the following in their appendix to the statement of material facts: defendant Harper's affidavit (DE 43-1), a 1994 judgment of conviction of plaintiff (DE 43-2), affidavit by Mary Stevens, the Chief Administrator for the Commission (DE 43-3), a 1994 judgment of conviction of plaintiff (DE 43-4), terms and conditions of parole release of plaintiff (DE 43-5), "OPUS OT 53" screen (DE 43-6), a 2012 arrest warrant (DE 43-7), an October 6, 2012 notice of revocation (DE 43-8), and a 2015 judgment and commitment of plaintiff (DE 43-9).

On March 13, 2017, plaintiff filed an opposition to defendants' motion for summary judgment and statement of material facts. On March 17, 2017, defendants filed a supplemented affidavit (DE 47), which is accompanied by the precise terms of the agreement reached between plaintiff and the Commission through the Mutual Agreement Parole Program ("MAPP").

On April 3, 2017, plaintiff filed a motion for partial summary judgment. In support of plaintiff's motion, he filed a memorandum in support (DE 50-1), an affidavit (DE 51), and a variety of documents (DE 50-2), consisting of an article on parole, plaintiff's parole agreement, and a copy of a statute on parole.

On April 11, 2017, defendants filed a response in opposition. Plaintiff filed a reply on April 27, 2017. On May 2, 2017, plaintiff filed the instant "motion sub judice." The motion was not properly signed, and plaintiff was directed to cure the deficiency within 21 days. On May 18, 2017, plaintiff signed the motion and re-filed it with this court.

### STATEMENT OF THE FACTS

Except as otherwise noted below, the undisputed facts are as follows: on November 17, 1994, plaintiff was convicted of second degree murder, and he was sentenced to life imprisonment. (See Stevens Aff. (DE 43-3) ¶ 3). The Commission began considering plaintiff for parole release on December 3, 2003, and his case was reviewed annually thereafter. (See id. ¶ 4). On September 10, 2008, plaintiff was approved to participate in MAPP. (See id. ¶ 5). The MAPP agreement was intended to provide plaintiff with an opportunity to prepare for eventual release on parole through a work release position. (See id.)

The MAPP Agreement signed by plaintiff, and the standard form utilized by the Commission to document MAPP agreements for other inmates, does not contain any reference to the length of

3

time the inmate will serve on parole once the MAPP agreement is completed and the inmate is released. (See Stevens Aff. (DE 47) ¶ 4). Similarly, plaintiff's MAPP agreement did not establish the terms of his parole. (See Compl. (DE 1) at 6). Rather, the MAPP agreement was used as a guide to progress plaintiff through the system with participation in community-based programs. (See id.) Even if the MAPP agreement had controlled the terms of his parole, the MAPP agreement contains no provision limiting plaintiff's term of parole to one year. (See Stevens Aff. (DE 47) ¶ 4; Defs.' Ex. A (DE 47-1)).

Plaintiff completed the MAPP agreement on March 10, 2011, and he was released on parole on May 16, 2011. (See Stevens Aff. (DE 47) ¶ 6). Under the laws in effect when plaintiff committed his offense, he was required to serve a term of parole of no less than one year and no more than five years.[3] (See Def. Ex. A (DE 41-1)). The Commission imposed a parole term of five years. (See Stevens Aff. (DE 43-3) ¶ 8). Under plaintiff's parole agreement, he agreed that: 1) he would not leave his county of residence without notifying his parole officer; 2) he would not use or possess drugs; and 3) he would notify his parole officer if he was arrested. (See Defs.' Ex. B (DE 43-5)). Plaintiff's parole was supervised in New Jersey. (See Stevens Aff. (DE 43-3) ¶ 6).

On August 16, 2012, plaintiff was arrested on drug charges in Brunswick County, North Carolina. (Id. ¶ 9). Plaintiff had not been given permission to leave New Jersey. (See id.) The Commission issued a warrant for plaintiff's arrest. (See Defs.' Ex. D (DE 43-7)).

---

[3] North Carolina's enactment of Structured Sentencing included revisions to parole terms, including the appropriate length of a term of parole. (See Stevens Aff. (DE 43-3) ¶ 14). These changes provide that a term of parole may be no greater than one year. (See Defs.' Ex. C (DE 41-3)). These changes, however, did not take effect until January 1, 1995, and they only applied to offenses committed after that date. (See id.) Therefore, these changes were not applicable to plaintiff.

4

On September 26, 2012, a parole revocation hearing was conducted. (See id. ¶ 10). At the hearing, plaintiff admitted to violating the terms and conditions of his parole. (See Stevens Aff. (DE 43-3) ¶ 10). The Commission voted to revoke plaintiff's parole. (See id. ¶ 10). Plaintiff received written notice of the alleged violations of probation, a disclosure of the evidence against him, had an opportunity to be heard in person and to present evidence, had a neutral hearing body, and received a written statement by the factfinder as to the evidence relied upon and the reasons for revoking probation. (See Compl. (DE 1) at 9-10; Defs.' Ex. D (DE 43-7); Defs' Ex. E (DE 43-8)). After his parole was revoked, plaintiff resumed serving his life sentence for second degree murder. (See Stevens Aff. (DE 43-3) ¶ 12). Plaintiff was subsequently reviewed for parole in 2013 and 2016, but he was not released on either occasion. (See id.)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry

5

of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

1.  Defendants' Motion for Summary Judgment

Defendants' move for summary judgment on the basis that there are no genuine issues of material fact, and they are entitled to judgment as a matter of law. (See Mot. Summ. J. (DE 40) at 1). In particular, defendants argue that plaintiff's claims are flawed because they are premised on a fundamental and mistaken interpretation of the law regarding parole. (See Mem. Supp. (DE 41) at 8).

A challenge to the procedures used to determine an inmate's eligibility for parole is correctly brought pursuant to § 1983. See Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (ruling a challenge to state procedures denying parole could be brought under § 1983 because plaintiff would be entitled, at most, to a new parole hearing and not a reduced sentence); see also Brown v. Johnson, 169 F. App'x 155, 157 (4th Cir. 2006) (unpublished) (noting that prisoner challenges to parole guidelines should proceed under § 1983); Overman v. Beck, 186 F. App'x 337, 338 (4th Cir. 2006) (stating that section 1983 is the appropriate cause of action for inmate challenges to "policies and procedures applicable to their parole reviews, [but] not the denial of parole itself").

In this case, plaintiff seeks monetary damages in the amount of six millions dollars for each year he was falsely imprisoned. (See Compl. (DE 1) at 5). Plaintiff argues that his MAPP agreement limited his term of parole to one year, and his term of parole had already expired before it was revoked. (See id. at 3). Plaintiff further argues that the Commission used the improper statute to determine the maximum length of his term of parole. (See id. at 3-6).

Plaintiff is challenging the constitutionality of his current confinement, and his claims are barred unless and until his parole revocation proceedings are set aside. Therefore, plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court held that a plaintiff seeking to recover damages pursuant to § 1983 for actions that would render a conviction or sentence invalid must first establish that the conviction has been reversed, expunged, invalidated, or otherwise called into question. 512 U.S. at 486. Heck's holding has also been extended to § 1983 lawsuits based on parole revocations. See, e.g, Thigpen v. McDonnell, 273 F. App'x 271, 272 (4th Cir. 2008) (applying Heck to probation revocation); Gibbs v. So. Car. Dept. of Probation, Parole, and Pardon Services, 168 F.3d 481 (Table), No. 97-7741, 1999 WL 9941 (4th Cir. 1999) (finding § 1983 complaint alleging wrongful incarceration due to unconstitutional parole revocation to be barred by Heck); see also Littles v. Board of Pardons and Paroles Division, 68 F.3d 122 (5th Cir.1995) (same).

In addition to being barred by Heck, plaintiff's claims also fail on the merits. Due process protections apply to parole revocation proceedings. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Parole revocation proceedings, however, do not afford parolees the same rights afforded criminal defendants at criminal trials. Id. at 489; State v. Sparks, 362 N.C. 181, 189 (2008) ("[W]e conclude that a post-release revocation hearing is not a criminal prosecution."). Rather, the Commission may revoke parole if it finds that the parolee violated the conditions of his parole. See N.C. Gen. Stat. § 15A-1371; N.C. Gen. Stat. § 15A-1373(d) (providing that "[i]f the parolee violates a condition at any time prior to the expiration or termination of the period, the [Parole] Commission . . . may revoke the parole as provided in G.S. 15A-1376 and reimprison the parolee[.]"). Procedural due process for a probation revocation requires written notice of the alleged violations of probation,

disclosure of the evidence against the probationer, an opportunity to be heard in person and to present evidence, a neutral hearing body and a written statement by the factfinder as to the evidence relied upon, and the reasons for revoking probation. Black v. Romano, 471 U.S. 606, 612 (1985) (citing Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973)).

In this case, plaintiff received the requisite due process protections. (See Compl. (DE 1) at 9-10; Defs.' Ex. D (DE 43-7); Defs.' Ex. E (DE 43-8)). Furthermore, the record clearly indicates that plaintiff's MAPP agreement did not create any contract limiting his term of parole to one year. (See Stevens Aff. (DE 43-3) ¶ 14). Likewise, the statute limiting a term of parole to one year, N.C. Gen. Stat. § 15A-1372, did not apply to plaintiff's conviction. (See Defs.' Ex. C (DE 41-3)).

In sum, plaintiff has failed to raise a genuine issue of material fact. Moreover, defendants have established that they are entitled to judgment as a matter of law. Consequently, defendants' motion for summary judgment is GRANTED.

2.  Plaintiff's Partial Motion for Summary Judgment

Because defendants are entitled to summary judgment in their favor, and all of plaintiff's claims against defendants are to be dismissed, plaintiff's motion is rendered moot. Therefore, plaintiffs' motion for partial summary judgment must be DENIED.

3.  Plaintiff's "Motion Sub Judice"

Plaintiff's "motion sub judice" is essentially a restatement of plaintiff's arguments in opposition to defendants' motion for summary judgment and in support of his own motion for partial summary judgment. (See Mot. (DE 57)). In addition, plaintiff argues that the revocation of his parole violated the Ex Post Facto Clause. (See id. at 4-5).

The Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 249-50 (2000) (citations omitted). In determining whether a retroactive change in parole review procedures violates the Ex Post Facto Clause, the issue is whether the application of the law "creates a significant risk of prolonging [the inmate's] incarceration." Id. at 251.

In this case, plaintiff has failed to make the requisite showing. In particular, plaintiff has failed to show any subsequent amendment that creates a significant risk of prolonging his incarceration. Therefore, plaintiff's "motion sub judice" must be DENIED.

## CONCLUSION

In summary, defendants' motion for summary judgment (DE 40) is GRANTED, and plaintiff's claims are DISMISSED. Plaintiff's motion for partial summary judgment and "sub judice motion" (DE 50, 57) are DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25th day of September, 2017.

LOUISE W. FLANAGAN
United States District Judge